WILLIAM AUGUST STUTZNER,

     Plaintiff
                                    Civil Action No. 07-10075

v.

                                    District Judge Gerald E. Rosen
                                    Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff William Stutzner brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Social Security disability benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the court affirm the administrative finding that Plaintiff is ineligible for Disability Insurance Benefits ("DIB") because he did not meet the 12-month durational requirement for disability. However, the ALJ's additional finding that "claimant was not under a 'disability' as defined in the Social Security Act" through July 13, 2006 (Tr. 25, ¶13) should be reversed. Accordingly,

Defendant's Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART. Plaintiff's Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

Plaintiff originally filed an application for Disability Insurance Benefits ("DIB") on April 10, 2002 alleging disability as of February 24, 2002 (Tr. 57-59). On June 23, 2003, Adminstrative Law Judge ("ALJ") Jerome B. Blum awarded benefits for a closed period, finding that Plaintiff met the disability insured status requirements from September, 2001 to January 24, 2003 as a result of cirrhosis of the liver and liver disease (Tr. 197). Citing Plaintiff's hearing testimony, the ALJ found that his liver condition "started improving around January 2003" (Tr. 196-197).

On July 13, 2004, Plaintiff reapplied for benefits, alleging disability as of May 29, 2003 (Tr. 211). After the initial denial of benefits, Plaintiff made a timely request for an administrative hearing, conducted by ALJ Michael F. Wilenkin on May 16, 2006 in Oak Park, Michigan (Tr. 518). Plaintiff, represented by attorney J. B. Bieski, testified (Tr. 520-537). On July 13, 2006, ALJ Wilenkin determined that Plaintiff was not disabled because he retained the ability to perform a full range of sedentary work through the date of the administrative decision (Tr. 24-25). On November 4, 2006, the Appeals Council denied review (Tr. 8-10). Plaintiff filed for judicial review on January 3, 2007.

## BACKGROUND FACTS

Plaintiff, born July 9, 1957, was 49 when the ALJ issued his decision (Tr. 25, 57). He attended college and worked previously as a stocker and machine builder (Tr. 67, 72, 218, 223). Plaintiff's July 13, 2004 application for DIB alleges disability as a result of back problems (Tr. 217).

## A. Plaintiff's Testimony

Plaintiff testified that he completed two years of college (Tr. 521). He reported that he had been unable to work since May 2003 due to a compression fracture of the back resulting in August 2003 surgery (Tr. 521). Plaintiff indicated moderate improvement as a result of the operation, but reported that he had subsequently re-injured his back, requiring a second operation in August 2004 (Tr. 521-522).

Plaintiff alleged that back pain and the need to lie down each day precluded all work (Tr. 523). He estimated that his condition obliged him to lie down at least twice each day (Tr. 525). He denied physical therapy or steroid injections, but stated that he currently took OxyContin and Vicoprofen two to three times a day, resulting in constant fatigue[1] (Tr. 523-525). Rating his discomfort at a "seven or eight" level on a scale of 10, Plaintiff reported pain "just below the ribs," radiating into the lower back and thighs (Tr. 524).

Plaintiff testified that he used a walker when going out due to "shaky" legs (Tr. 526). He estimated that he could walk up to 100 feet without the walker and "half a block" with the walker before experiencing pain (Tr. 527-528). Plaintiff stated that he could sit for only

---

[1]Plaintiff's treating notes refer to his medication as "OxyCodin." The Court will refer to the narcotic as "OxyContin," the spelling used above.

one hour, and lift a maximum of five pounds due to back weakness (Tr. 528).  He reported that he had previously been found disabled because of liver failure, admitting that he continued to drink until his first back injury in May, 2003 (Tr. 528-529).  Plaintiff reported further that he received chiropractic treatments between May, 2003 and his August, 2003 surgery (Tr. 531).

Plaintiff denied undergoing physical therapy or performing back exercises since undergoing the August 2004 surgery (Tr. 534).  He agreed with the ALJ's characterization of his condition as "static" since the 2004 surgery, adding that none of his treating sources recommended additional surgery (Tr. 535).

### B.  Medical Evidence

#### 1.  Treating Sources

In March 2002, Bicounty Hospital medical records indicate that Plaintiff sought treatment for abdominal pain (Tr. 110).  Peter Pashley, D.O., noted that Plaintiff had been diagnosed with cirrhosis of the liver with a secondary diagnosis of jaundice (Tr. 112, 117). In January 2003, Bruce S. Kovan, D.O,. determined that Plaintiff's liver condition had improved, finding no signs abdominal swelling or jaundice (Tr. 389).  Dr. Kovan made similar findings at April and May 2003 exams (Tr. 386).  In May 2003, Plaintiff sustained wrist and lumbar vertebra fractures after falling while intoxicated (Tr. 303).  Treating sources noted that Plaintiff's medical history included "end-stage liver disease" due to alcohol abuse, as well as a history of GERD (gastroesophogeal reflux disease) and depression (Tr. 306-307). Treating notes indicate the absence of a spinal cord injury (Tr. 303).  Plaintiff reported back

discomfort in July 2003 and continued to wear a body jacket (Tr. 412).

In August 2003, Plaintiff underwent back surgery to relieve discomfort as a result of the compression fracture at L1 (Tr. 361). Surgeon Richard A. Scott, D.O., reported no complications (Tr. 361). In September 2003, Plaintiff told Dr. Scott that he was "improved but not perfect," reporting that he was "very active" (Tr. 408). Dr. Scott noted that Plaintiff exhibited good posture and "no tenderness to percussion" (Tr. 408). In October 2003 physical therapy discharge notes state that Plaintiff achieved "well over 80% of forearm ROM in supination," with full pronation and "full flexion and extension of the hand" (Tr. 310). Physical Therapist ("PT") Darrel Knick opined that Plaintiff would "do very well" if he remained compliant with home exercises (Tr. 310). The next month, Dr. Scott noted that Plaintiff complained of "mild discomfort in the upper back," but was "doing quite well" (Tr. 406). Dr. Scott recommended continued therapy (Tr. 406).

In February 2004, Dr. Kovan's treating notes indicate that Plaintiff had begun "drinking again around Christmas" (Tr. 384). In March 2004, following a fall the month before, an MRI of Plaintiff's lumbar spine showed "[o]ther than the minor disc degenerative change at L2-L3" a "grossly unremarkable" study (Tr. 479). April 2004 needle conduction studies on Plaintiff's lower extremities also yielded normal results (Tr. 314).

In June 2004, Dr. Scott noted that Plaintiff was "very tender to percussion" (Tr. 404). In July 2004, Sayeed Khan, M.D., recommended that Plaintiff's dosage of OxyContin be increased to 25 milligrams every 12 hours due to "intractable low back pain" (Tr. 350). Dr. Khan noted that Plaintiff reported minimal relief from bilateral lumbar facet nerve blocks,

concluding that he did "not have any other interventional pain management techniques for him at this time" (Tr. 350).

In August 2004, Plaintiff underwent a decompressive laminectomy for an L1 vertebral body fracture sustained in the February 2004 fall (Tr. 272). Plaintiff did not experience complications and was discharged three days after surgery (Tr. 372, 374-376). His records indicate that he was unable to take Tylenol "secondary to liver disease" (Tr. 372).

In October 2004, Dr. Kovan reported to Dr. Pashley that Plaintiff exhibited good color and had gained eight pounds since his last visit (Tr. 383). The same month, Dr. Scott noted that Plaintiff experienced mild discomfort, concluding that he appeared "neurologically stable" (Tr. 398). In November 2004, Dr. Pashley completed an SSA questionnaire, finding that Plaintiff was unable to walk for sustained periods due to back pain (Tr. 418).

In February 2005, Dr. Scott opined that "[g]iven [Plaintiff's] fractured spine, weakness, pain and end-stage liver disease, it is highly unlikely that he will be able to be gainfully employed and is therefore permanently disabled" (Tr. 397). The same report noted that Plaintiff took two Vicoprofen per day for pain, but did not experience leg edema (Tr. 397). In June 2005, Dr. Scott noted that Plaintiff "seem[ed] to be active" (Tr. 490). In September 2005, Plaintiff reported that his backache did "not seem any worse," exhibiting good posture but a slow gait (Tr. 489). Dr. Scott noted that Plaintiff obtained good results from a cortisone injection for joint arthritis (Tr. 489). Dr. Kovan's October 2005 treating notes indicate that Plaintiff felt well and did not exhibit signs of liver failure (Tr. 500).

In March 2006, Plaintiff fell in the area outside his apartment complex, but "appear[ed] in no acute distress" at his examination with Dr. Scott eight days later (Tr. 494). On May 1, 2006, Dr. Pashley submitted a letter supporting Plaintiff's application for disability benefits, opining that Plaintiff was unable to work due to back pain (Tr. 492). Dr. Pashly also found that Plaintiff was unable to lift over five pounds and suffered from a rib fracture (Tr. 492). Dr. Scott also submitted an opinion letter, stating that Plaintiff's condition prevented him from "any substantial gainful work," and noting that he was incapable of lifting, twisting, and side bending (Tr. 514). On July 31, 2006, Dr. Kovan stated that Plaintiff's liver condition had the potential to create future health problems (Tr. 515).

### 2. Consultive and Non-Examining Sources

An October 2004 case review of Plaintiff's treating records and activities of daily living ("ADLs") found that he was able to take care of his personal needs if they were performed at a slow pace (Tr. 274). The report, noting that a June 2003 examination showed no lower extremity abnormalities and "5/5" muscle strength in the flexor of the hip, knee, ankle and foot, found that Plaintiff's claim of disability as of his May 29, 2003 fall was only "partially credible," but noted limitations in "lifting, standing, walking, sitting, climbing stairs, kneeling, squatting and reaching" (Tr. 274).

The next month, a Physical Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift 20 pounds occasionally and ten frequently; the ability to stand, walk, or sit for six hours in an 8-hour workday, and an unlimited ability to push or pull

(Tr. 281). The assessment found further that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but did not experience manipulative, visual, communicative, or environmental limitations (Tr. 282-282). A consultation form completed the same month found insufficient evidence to support a claim of mental impairments (Tr. 288). Likewise, a Psychiatric Review Technique performed the same day found the absence of mental limitations (Tr. 289).

### C. Vocational Expert Testimony

The administrative hearing did not include Vocational Expert testimony.

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Wilenkin found that Plaintiff experienced the severe impairments of "left lumbar vertebrae fracture and left wrist fracture requiring surgery," but that he did not experience an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 21, 24). Citing Medical-Vocational rule 201.21, the ALJ determined that although Plaintiff could not perform any of his past relevant work as a machine builder and stock person, he retained the residual functional capacity ("RFC") to perform "a full range of sedentary work" on or before the expiration of his insured period on June 30, 2003 (Tr. 24, 25)

The ALJ concluded that Plaintiff's allegations of disability were "not totally credible," finding that records failed to document a "severe and painful back condition" until February, 2004 (Tr. 22). The ALJ rejected Dr. Scott's May 2006 disability opinion, finding that "he seemed to be referring to the claimant's condition after his date last insured of June

30, 2003," also noting that Dr. Scott did not begin treating Plaintiff until August 2003 (Tr. 22-23). Likewise, he rejected Dr. Pashley's May 2006 finding on the basis that record evidence did not support the contention that Plaintiff was disabled before the 2003 expiration of insurance (Tr. 23). The ALJ also cited treating records showing that Plaintiff did not begin taking narcotics "on a regular basis" until February 2004 (Tr. 23). He "noted at the hearing that [Plaintiff] had adequate concentration, memory, and responsiveness and showed no signs of pain or any other observable abnormalities" (Tr. 23). In addition to finding that Plaintiff was ineligible for DIB, the ALJ found that Plaintiff "was not under a 'disability' as defined in the Social Security Act, at any time through the date of the [July 13, 2006] decision" (Tr. 25, ¶13).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Twelve-Month Durational Requirement

As a threshold matter, the Court notes that substantial evidence supports the ALJ's conclusion that although Plaintiff sustained injuries in a May 29, 2003 fall (one month before the expiration of his eligibility for insurance) he was not continuously disabled for a period of 12 months following the accident and is therefore not eligible for disability insurance benefits ("DIB").

42 U.S.C.A. § 423 (d)(i)(A) defines disability as the " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. . ." *See also, Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(e) (The claimant must meet the durational requirement to establish disability).

While Plaintiff's treating records indicate that he may have experienced disability for a period of time following his May 29, 2003 injury, his September and October 2003 treating records support the conclusion that he was not continuously disabled for a 12-month period beginning before the June 30, 2003 expiration of DIB entitlement.  As discussed above, September 2003 treating notes indicate that Plaintiff was "very active" the month following surgery (Tr. 408).  Over the next two months, Dr. Scott's records and physical therapy notes show that Plaintiff experienced only mild upper back pain and exhibited an improved range of wrist and hand motion (Tr. 310, 406).

However,  Plaintiff's later medical records, along with February 2005 and May 2006 statements by his treating physicians strongly suggest that Plaintiff was indeed disabled for

at least 12 months at some point following a February 2004 accident. Plaintiff applied only for DIB, not Supplemental Security Income (SSI) benefits.[2] Thus, having found that Plaintiff's disability insurance expired before the onset of a 12-month period of disability, the ALJ was not obliged to consider whether Plaintiff was continuously disabled for any other period lasting or exceeding 12 months prior to the July 13, 2006 administrative decision.

Nevertheless, the ALJ found additionally that Plaintiff was capable of a full range of sedentary work from May 29, 2003 until the issuance of the administrative decision of July 13, 2006. Although substantial evidence supports the finding that Plaintiff is not eligible for DIB because he did not meet the durational requirement, the ALJ's additional conclusion that Plaintiff was capable of a full range of sedentary work *through the date of the administrative decision* is not well supported. The June 30, 2003 expiration of Plaintiff's insured status, while foreclosing entitlement to DIB, does not preclude him, if eligible, from seeking Supplemental Security Income for a period beyond the June 30, 2003 expiration date. However, the ALJ's substantive disability determination, if upheld, may well bar further

_____

[2]In contrast to Plaintiff's current application for DIB which requires a claimant to have sufficient "quarters of coverage" to be insured (20 C.F.R. §404.101(a)) and to show that he was insured when his disability commenced, an SSI claim is based on both medical and non-medical criteria but does not include a "quarters of coverage" requirement. As with a DIB application, the claimant must establish disability within the meaning of the Social Security Act. 42 U.S.C. §1382c(a)(3). However, additionally, an individual seeking SSI must also show income and resources below prescribed levels. 42 U.S.C. §1382; 20 C.F.R. §416.1100 *et seq.*

consideration of whether Plaintiff was disabled at *any* time before July 13, 2006. *See Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 842 (6th Cir. 1997)(administrative decisions subject to *res judicata*, and "a subsequent ALJ is bound by the findings of a previous ALJ."). Accordingly, while Defendant's motion for summary judgment should be granted based on the 12-month durational requirement, I will nonetheless address Plaintiff's other arguments to preserve his potential entitlement to SSI.

### B. The Medical-Vocational Rules / Credibility

Plaintiff argues that the ALJ's Step Five determination that he could perform a full range of sedentary work stands unsupported by record evidence. *Plaintiff's Brief* at 13-19. He faults the ALJ for reliance on the Medical-Vocational Guidelines, contending that his significant non-exertional limitations required the use of a Vocational Expert ("VE") at the hearing. On a related note, he contends that the administrative opinion contained misstatements of the record and a procedurally and substantively inadequate credibility analysis. *Id.* In particular, Plaintiff claims that the ALJ applied an incorrect legal standard in finding him non-disabled simply on the basis that he did not experience "intractable" pain. *Id.* at 18, *citing to* Tr. 22.

At Step Five of the administrative analysis, the burden of proof shifts to the Commissioner to establish that the claimant retains the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984). "In many cases, the Commissioner

may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of 'disabled' or 'not disabled' based on the claimant's age and education and on whether the claimant has transferable work skills." *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 548 (6th Cir. 2004). While "in the case of a non-exertional impairment, the grids may be used to direct a conclusion if the claimant's non-exertional impairments do not significantly reduce the underlying job base . . . the ALJ must back such a finding of negligible effect with the evidence to substantiate it." *Lopez v. Barnhart,* 78 Fed.Appx. 675, 679, 2003 WL 22351956, *4 (10th Cir. 2003)(internal citations omitted). Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15, if a nonexertional limitation substantially limits a claimant's ability to perform other work, reliance on the grids is improper. "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *see also Wilson, supra*, at 548.

While the substantial evidence, as discussed above, allowed the ALJ to conclude that Plaintiff did not experience work-related non-exertional limitations *prior* to the expiration of insured status,[3] treating and non-examining records created *subsequent* to Plaintiff's February 2004 fall all indicate that he experienced non-exertional as well as exertional

---

[3]While the ALJ found that Plaintiff experienced the severe impairment of a "history of . . . a left wrist fracture," physical therapy notes created in October 2003 support the conclusion that the condition did not create non-exertional limitations for a continuous 12-month period (Tr. 24, 310).

limitations. An October 2004 case review found that Plaintiff experienced the non-exertional limitations of kneeling, squatting, and reaching (Tr. 274). A November 2004 Residual Functional Capacity Assessment of his treating records found postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 282). Most significantly, in May 2006, treating physician Scott made the explicit finding that Plaintiff was incapable of twisting and "side bending" (Tr. 514). In the face of overwhelming evidence supporting the presence of non-exertional limitations following Plaintiff's February, 2004 accident, the ALJ erred in relying on the grids, without the testimony of a Vocational Expert. *See Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D.Tenn. 2004)("[W]here the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through [VE] testimony"). In the absence of a VE's testimony, substantial evidence does not support the ALJ's finding that Plaintiff was capable of a full range of sedentary work *after* February 2004.

Likewise, substantial evidence supports the ALJ's credibility determination only as to Plaintiff's eligibility for DIB. The credibility determination is guided by SSR 96-7p which describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental

impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Second, SSR 96-7p mandates that "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* Further, C.F.R. 404.1529(c)(3) requires the ALJ to consider factors such as the "type, dosage, effectiveness, and side effects" of medication when considering a claimant's allegations.

Again, while substantial evidence contradicts Plaintiff's allegations of disability prior to his accident in February 2004, later treating records support Plaintiff's claim of disabling limitations as a result of back pain and medication side effects.[4] In June 2004, Dr. Scott found that Plaintiff's back was "very tender to percussion" (Tr. 404). Although treating notes by Dr. Khan the next month indicate that Plaintiff received an increased dose of OxyContin after failing to obtain relief from nerve blocks, the administrative decision omits discussion of how OxyContin's side effects would bear upon Plaintiff's capacity for work[5] (Tr. 350). Other than the ALJ's statement that Plaintiff exhibited "adequate concentration, memory[,] and responsiveness" at the hearing, the remainder of the credibility analysis

---

[4]The ALJ concedes that Plaintiff "began to experience severe back pain secondary to the [February 2004] fall," observing further that "as of November[,] 2004 . . . he was unable to tolerate his back pain" (Tr. 22).

[5]According to *PDRhealth.com*, the side effects of OxyContin, a narcotic pain killer, include dizziness and drowsiness.

appears to allow for the possibility that Plaintiff experienced a later period of disability exceeding 12 months (Tr. 22, 23). In fact, the ALJ discussed later treating records (including Drs. Scott and Pashley's opinions that Plaintiff's conditions precluded all work) only to extent of illustrating that Plaintiff's condition worsened after the expiration of his insurance. Again, while his ineligibility for DIB in the relevant time frame is well supported, the finding that his non-disability continued through July 13, 2006 is not.

However, on a related note, I disagree with Plaintiff's argument that misstatements found in the administrative decision require a remand. First, Plaintiff faults the ALJ for citing treating notes related to a liver condition to support the proposition that Plaintiff did not experience disability as a result of back pain before the expiration of his insurance. *Plaintiff's Brief* at 17, *citing to* Tr. 22, 158. This one error in referencing to an inapplicable section of the medical records does not constitute reversible error in the face of additional substantial evidence easily supporting the denial of DIB.

Plaintiff also argues that the ALJ misapplied SSR 96-7p by finding non-disability because his pain was not "intractable," noting that "chronic intractable pain" is not required for a finding of disability. *Id.* at 18, *citing to* Tr. 22. However, the ALJ's observation that Plaintiff did not experience "intractable pain" is followed by the statement three sentences later that "the records reveal that the claimant was improved and very active as of September[,] 2003" (Tr. 22). While the ALJ noted the absence of intractable pain in the months following Plaintiff's May 29, 2003 injury, there is absolutely no indication that he

found Plaintiff not disabled simply because his pain had not yet reached an "intractable" level. Instead, the ALJ noted that substantial evidence strongly supported the conclusion that Plaintiff's back condition did not create disabling limitations for 12 months within the insured period.

Finally, the fact that the administrative decision contains the erroneous statement that Plaintiff took only "Tylenol" before February 2004 (Tr. 23), despite Plaintiff's actual testimony that he took Vicoprofen, does not invalidate the ALJ's accompanying observation that he was not prescribed the narcotic OxyContin until after his February 2004 fall (Tr. 524). Nor does the Tylenol/Vicoprofen mixup, standing alone, suggest "non-compliance with Defendant's own legal standards" to the extent needed to reverse a DIB determination well supported by substantial evidence. "[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson, supra,* 378 F.3d at 547 (6th Cir. 2004); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion).

### C. The Treating Physician Analysis

Plaintiff contends that the ALJ performed a flawed analysis of his treating physicians' opinions that he was permanently disabled. *Plaintiff's Brief* at 19-20. He also submits that the ALJ erroneously found that Drs. Scott and Pashley's 2006 opinion were irrelevant to his entitlement to DIB benefits. *Id.*

*Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370, fn 7 (6th Cir.

1991), states that "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") In *Wilson, supra* 378 F.3d at 544 (6ᵗʰ Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

Moreover, regardless of whether substantial evidence is found elsewhere in the record to contradict the treating source's findings, *Wilson* at 544, *citing* 20 C.F.R. § 404.1527(d)(2) holds that the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion.

The ALJ reasonably found that Drs. Scott and Pashley's 2005 and 2006 statements that Plaintiff was disabled were irrelevant to whether he experienced disability before June 30, 2003. Dr. Scott first opined in February 2005 that Plaintiff was disabled, but made no mention of a disability onset date (Tr. 397). If anything, the statement, which notes that "[t]he anterior fusion is solid," appears to allude to Plaintiff's condition as a result of his February 2004 injury and second surgery in August 2004 (Tr. 397). Further, while Plaintiff emphasizes that Dr. Pashley's May 2006 opinion should be accorded additional weight because the treating relationship began even before the expiration of his insurance status, Dr. Pashley's opinion does not suggest that Plaintiff experienced disability as a result of back

problems prior to the 2003 insurance expiration. Likewise, although Dr. Pashley's November 2004 assessment, made after the February 2004 injury and August 2004 surgery, states that Plaintiff experienced "constant" pain from May 29, 2003 forward, he does not state that Plaintiff was disabled as a result of his first injury. Significantly, although Plaintiff contends that he was rendered disabled as of May 2003, he did not apply for benefits until several months after his February 2004 fall (Tr. 211).

### D. 42 U.S.C. §405(g)

Once a district court acquires subject matter jurisdiction to review a final decision of the Commissioner, the court has the power under 42 U.S.C. § 405(g) to affirm, modify, reverse or remand the action. *Kienutske v. Barnhart,* 375 F.Supp.2d 556, 566 (E.D.Mich. 2004). Here, the ALJ permissibly found that Plaintiff was ineligible for DIB. Because this finding is amply supported by the record, further fact-finding is not required. Although I find that the ALJ's additional conclusion that Plaintiff was non-disabled through July 13, 2006 is not supported by substantial evidence, Plaintiff did not apply for SSI and therefore to remand for a determination of SSI eligibility for the later period is inappropriate. However, because the ALJ's erroneous finding that Plaintiff was continuously non-disabled through July 13, 2006 may bear upon a future claim for SSI benefits, *see Drummond, supra*, the finding that "claimant was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision," should be reversed.[6]

_____

[6] This is not to say that this Court should make a determination that Plaintiff *was* disabled during this time period. Were it not for the ALJ's well-supported finding that

## **CONCLUSION**

For the above reasons, I recommend that the district court affirm the administrative finding that Plaintiff is ineligible for Disability Insurance Benefits. However, the ALJ's additional finding that "claimant was not under a 'disability' as defined in the Social Security Act" through July 13, 2006 should be reversed. Accordingly, Defendant's Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART. Plaintiff's Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

------------------------

Plaintiff did not meet the durational requirement, Plaintiff would be entitled to a remand for the ALJ to re-determine the issue of disability after taking the testimony of a Vocational Expert. *See Williams v. Barnhart, supra.* Thus, whether the Plaintiff was disabled between February 2004 and August 2006 is an open question, to be resolved if he should apply for SSI benefits.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  November 28, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 28, 2007.

S/Gina Wilson
Case Manager